UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL MINTHORN,

                         Plaintiff,                       Civil Action No. 14-14114
                                                    Honorable Avern Cohn
                                                    Magistrate Judge David R. Grand

v.

COMMISSIONER OF SOCIAL
SECURITY,

                         Defendant.

_____/

## REPORT AND RECOMMENDATION TO DISMISS THE COMPLAINT FOR FAILURE TO PROSECUTE [1]

### I.      RECOMMENDATION

*Pro se* plaintiff Michael Minthorn ("Minthorn") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying his claim for benefits. Having failed to file a renewed motion for summary judgment despite an order from the Court requiring its filing, and having offered no excuse as to his failure to file such a motion, the Court RECOMMENDS that the complaint (Doc. #1) be DISMISSED WITH PREJUDICE for failure to prosecute.

### II.      REPORT

#### A.      Background

Minthorn commenced this action on October 27, 2014. (Doc. #1). At the time, he was represented by attorney Richard Doud of the firm Davidson, Breen, Doud, Steele & Ferguson, P.C. (the "Firm"). Doud filed a motion for summary judgment on Minthorn's behalf on February 11, 2015. (Doc. # 9). On April 10, 2015, attorney James Smith ("Smith") of the Firm

moved to both substitute into the action for attorney Doud on behalf of Minthorn (Doc. #11) and for leave to amend the motion for summary judgment. (Doc. #12). At the same time, Smith filed a proposed amended motion for summary judgment. (Doc. #13).

On May 20, 2015, this action was transferred to a three-judge panel (the "Panel") to address the Firm's representation of Social Security claimants in the Eastern District of Michigan. (5/20/15 docket entry). Pursuant to 15-AO-033, on June 9, 2015, the Panel administratively stayed this action. (Doc. #16). On October 19, 2015, pursuant to 15-AO-045, the Panel determined that the affected cases (including this one) would be transferred back to the originally assigned judge, and that it would be each such judge's responsibility to determine when to lift the stay. (10/19/15 docket entry).

The Court was later advised that the Firm had notified Minthorn that he would have until December 30, 2015, to retain a new attorney and have that attorney file an appearance in this action. Minthorn was also notified that if no such appearance was filed by December 30, 2015, the Court would consider Minthorn to be continuing his appeal without legal representation, *i.e.*, that he would be representing himself in this action *pro se*. (Doc. #17). Because no new attorney appeared on Minthorn's behalf, the Court deemed him to be representing himself *pro se*, ordered that his motion for summary judgment and his proposed amended motion for summary judgment be stricken from the docket, and issued an amended scheduling order. (Doc. #18). The Court mailed a copy of this last order to Minthorn at his address listed on the docket. (1/11/16 docket entry). It was returned as undeliverable on February 10, 2016. (Doc. #19). On the label the Post Office used to return the order to the Court, it listed an alternative address for Minthorn at "514 N. Mincer Dr., Au Gres, MI 48703-9729." (*Id.*).

In its order dated May 24, 2016, the Court required Minthorn, on or before June 13, 2016,

to either file a renewed motion for summary judgment or show cause in writing as to why this case should not be dismissed. (Doc. #20). The Court explicitly warned Minthorn that, in the event he failed to file documents by the above deadline, it would either "(a) issue a report and recommendation that the case be Dismissed with prejudice for want of prosecution pursuant to Rule 41(b) of the Federal Rules of Civil Procedure and E.D. Mich. LR 41.2; or (b) treat this matter as before the Court upon the documents submitted." (*Id.* at 2). The Court mailed a copy of its order to both Minthorn's address listed on the docket and the alternative address listed on the Post Office's return label. (5/24/16 docket entries). The mailing to the address listed on the docket was returned as undeliverable (Doc. #21), but the one sent to his alternative address was not returned. To date, Minthorn has not filed a renewed motion for summary judgment. (Doc. #21). Nor has Minthorn taken any steps to notify the Court of a change of address, despite his continuing obligation to do so. *See Yeschick v. Mineta*, 675 F.3d 622, 630 (6th Cir. 2012) ("it is the party, not the court, who bears the burden of apprising the court of any changes to his or her mailing address.").

**B.     Analysis**

If a plaintiff fails to prosecute an action, it can be dismissed either pursuant to the Court's inherent power to control its docket or involuntarily under Fed.R.Civ.P. 41(b). *Link v. Wabash R. Co.*, 370 U.S. 626, 629-32 (1962). The authority to dismiss a plaintiff's case for failure to prosecute is available to the district court "as a tool to effect management of its docket and avoidance of unnecessary burdens on the tax-supported courts and opposing parties." *Schafer v. City of Defiance Police Dep't.*, 529 F.3d 731, 736 (6th Cir. 2008) (quoting *Knoll v. AT & T*, 176 F.3d 359, 363 (6th Cir. 1999)). A Rule 41(b) dismissal is an appropriate sanction for a *pro se* litigant's failure to provide the Court with information regarding his current address. *Trotter v.*

3

*Gonzalez*, No. 03-10096, 2008 U.S. Dist. LEXIS 125241, at *2 (E.D. Mich. Jul. 15, 2008); *Ortiz v. Donnellon*, No. 11-14154, 2012 U.S. Dist. LEXIS 75541, at *1 (E.D. Mich. Apr. 18, 2012) (courts may dismiss an action *sua sponte* pursuant to Rule 41(b) for failure to prosecute).

Even where 41(b) dismissal is warranted, however, there is a line of cases from this district requiring courts to conduct an independent review of the record to ensure that the ALJ's decision is supported by substantial evidence. *Wright v. Comm'r of Soc. Sec.*, No. 09-15014, 2010 U.S. Dist. LEXIS 136402, at *3 (E.D. Mich. Dec. 27, 2010) (holding that a Social Security plaintiff has "no burden to do anything in order to obtain judicial review of the administrative decision except file a timely complaint."); *see also Krawczak v. Comm'r of Soc. Sec.*, No. 14-11281, 2016 U.S. Dist. LEXIS 39420, at *2-3 n.2 (E.D. Mich. Feb. 26, 2016) (remanded on other grounds); *but see Salmo v. Comm'r of Soc. Sec.*, No. 11-14926, 2012 U.S. Dist. LEXIS 185107, at *6 (E.D. Mich. Nov. 27, 2012) (collecting cases dismissing Social Security complaints pursuant to Rule 41(b)).  To satisfy any obligation the Court may have under these precedents, it will review the ALJ's decision to determine whether it is supported by substantial evidence.

Minthorn initially received disability insurance benefits as of June 30, 2008, after he fractured his right femur. (Tr. 70-71).  However, on August 30, 2011, the Commissioner issued a "Cessation or Continuance of Disability or Blindness Determination and Transmittal" concluding that Minthorn was no longer disabled as of that date. (Tr. 72).  A disability hearing officer upheld the Commissioner's cessation of disability determination on August 8, 2012. (Tr. 100-110).  Minthorn then timely requested a hearing before an ALJ. (Tr. 119).  After conducting a hearing on April 30, 2013, the ALJ affirmed the Commissioner's cessation of disability determination and concluded that Minthorn's disability ended as of August 30, 2011. (Tr. 32, 38-61).

4

In arriving at his decision, the ALJ reviewed the objective medical evidence, which substantiated the following medically determinable impairments as of August 30, 2011: soft tissue of the lower extremity, arthritis of the lower extremity, affective disorder. (Tr. 19).

The ALJ then appropriately determined that Minthorn's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 19). The ALJ specifically considered listings 1.02 ("Major dysfunction of a joint(s) (due to any cause)") and 1.06 ("Fracture of the femur, tibia, pelvis, or on or more of the tarsal bones") and found no evidence that Minthorn's physical impairments met either listing as of August 30, 2011. (Tr. 19-20). The ALJ also correctly concluded that Minthorn's mental impairments did not meet Listing 12.04(B) ("Affective disorders") since Minthorn's September 2011 function report, and the third-party function report of his girlfriend, supported a determination of only mild to moderate difficulties in activities of daily living, social functioning, concentration, persistence or pace, with no evidence of any episodes of decompensation. (Tr. 21, 195-210). In addition, the record is devoid of any "[m]edically documented history of a chronic affective disorder" satisfying the criteria set forth in Listing 12.04(C). (Tr. 21).

Next, the ALJ found that the impairment for which Minthorn had initially received disability benefits, a right femur fracture (Listing 1.06(B)), had medically improved as of August 30, 2011. (Tr. 22). This finding is supported by substantial evidence. In May 2010, a CT scan of Minthorn's right leg revealed a "component of fibrous union identified at the fracture site" (Tr. 301, 614). However, independent medical examiner Paul LaClair, M.D., attested that "there was reasonable healing of the fracture." (Tr. 681). As of October 2010, Minthorn's physical therapist noted that he ambulated with an antalgic gait without the use of an assistive device. (Tr. 312). Minthorn later improved to ambulating with a Trendelenburg gait, again without the use of an

assistive device. (Tr. 325).  Minthorn testified at the hearing that he is able to walk 300 yards, and even testified that he has "to walk after I sit for too long," and finds himself taking such walks five or six times in each eight-hour day.  (Tr. 45, 49).  He also testified that he drives a car using both of his feet.   (Tr. 45).   Furthermore, Minthorn and his girlfriend stated in their September 2011 function reports that Minthorn could walk 150 to 200 yards before needing to rest. (200, 208).  Minthorn also indicated that he is able to do basic housework, like vacuuming, dishes, and laundry (although he takes him longer because of his leg), and that he goes hunting a few times each year.  (Tr. 197, 199, 207).

After concluding that Minthorn's medically determinable impairments as of August 30, 2011, were sufficiently "severe" under Social Security regulations, the ALJ proceeded to evaluate Minthorn's residual functional capacity ("RFC"). (Tr. 22-23).  The ALJ concluded that Minthorn is capable of performing sedentary work with the following limitations: lifting up to 10 pounds occasionally; a sit/stand option at will provided he is not off task more than 10 percent of the work period (and that he may exercise this option on an hourly basis after sitting or after walking 300 yards); no climbing of ladders, ropes, or scaffolds; no kneeling, crouching, or crawling; and unrestricted performance of simple, routine and repetitive tasks. (*Id.*).   In formulating his RFC assessment, the ALJ assigned great weight to Dr. LaClair's March 2013 medical opinion that Minthorn should have "permanent activity restrictions" including "10 pound maximum lift, sit/stand option, no squatting, kneeling or crawling, no prolonged standing or walking and no ladder climbing." (Tr. 697, 26).  Since this was the most restrictive medical opinion in the record, the Court perceives no error in either the ALJ's RFC determination or the weight he afforded to Dr. LaClair's medical opinion.

As for Minthorn's alleged mental impairments, having considered the clinical medical

evidence, as well as his own self-reported activities of daily living, the ALJ determined that Minthorn's "complaints of disabling symptoms and limitations" were less than fully credible. (Tr. 29-30). This finding, and the limitations imposed in his RFC are supported by substantial evidence. Primarily relying upon Minthorn's September 2011 function report, in which Minthorn indicated that he could pay attention "pretty long," can follow simple written and spoken instructions, does not need special reminders to take care of his personal needs, and gets along "good" with authority figures (Tr. 197, 200, 201), and the similar reports in the third-party function report of his girlfriend (Tr. 205, 207 (noting that Minthorn spends time with others "several times a week"), 208, 209), the ALJ observed that Minthorn could perform a range of daily household chores and recreational activities that significantly undermined the veracity of his hearing testimony and the self-reported severity of his symptoms. (Tr. 29-30, 195-210). The Court also notes medical records, such as a July 21, 2011 medical review report from Dr. Kishore Kondapaneni, stating that Minthorn had "no complaints at this time…symptoms are stable…denies any symptoms of anger…anxiety…behavior issues…depression…side effects from his medications…" (Tr. 488). Moreover, a Mental Residual Functional Capacity Assessment performed by Dr. Art Durdon, M.D., on August 29, 2011, mostly (and in many areas entirely) reflected findings that Minthorn was "not significantly limited" in understanding and memory, sustained concentration and persistence, social interation, and adaptation, and concluded that Minthorn "[r]etains the ability to do simple tasks on a sustained basis…" (Tr. 496-98).

In sum, the ALJ formulated an RFC that accounted for Minthorn's credible limitations, and sought and relied upon vocational expert testimony to determine what other work he would still be capable of performing. (Tr. 31-32). Based upon its own comprehensive review of the

record, the Court concludes that the ALJ's reasons, and his ultimate decision finding Minthorn not disabled, are all supported by substantial evidence. Therefore, the ALJ's decision should be affirmed and the Court recommends dismissal of Minthorn's complaint with prejudice. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (stating that judicial review under the Social Security Act is limited in that courts "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record.") (internal citations omitted); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (stating that in the event the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion.") (internal citations omitted).

## III.    CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the complaint (Doc. #1) be DISMISSED WITH PREJUDICE.


Dated: June 17, 2016                              s/David R. Grand
Ann Arbor, Michigan                         DAVID R. GRAND
                                                          United States Magistrate Judge


## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140

(1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.  A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 17, 2016.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager

9